Nabil Abu-Assal, SBN 136764
nabil@cypressllp.com
Bob Muller, SBN 189651
bob@cypressllp.com
CYPRESS LLP
11111 Santa Monica Blvd., Suite 500
Los Angeles, California 90025
Telephone: (424) 901-0123
Facsimile: (424) 750-5100

Attorneys for Defendant,
Kilroy Realty Corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| SHK MANAGEMENT, INC. d/b/a KORMAN COMMUNITIES, INC., a Pennsylvania Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KILROY REALTY CORPORATION, a Maryland Corporation; and DOES 1 through 10,<br><br>Defendants. | Case No. 2:14-cv-02509-DMG-E<br><br>Hon. Dolly M. Gee<br><br>DEFENDANT KILROY REALTY CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST THROUGH SEVENTH CAUSES OF ACTION FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED [FRCP 12(b)(6)]<br><br>[Declaration of Bob Muller, [Proposed] Order, and Joint Application to File Documents Under Seal Submitted Concurrently Herewith]<br><br>Action Filed: April 2, 2014<br>Trial Date:     None Set<br><br>**Date:  June 27, 2014**<br>**Time: 9:30 a.m.**<br>**Courtroom: 7** |

TO THE PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on June 27, 2014, at 9:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom 7 of the above-entitled court, Defendant Kilroy Realty Corporation will and hereby does move for dismissal of Plaintiff SHK Management, Inc., dba Korman Communities, Inc.'s Complaint in its entirety.

This motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the following grounds:

1.  The first cause of action for breach of contract does not state a claim upon which relief can be granted because as a matter of law the parties did not enter into a binding and enforceable contract [Rule 12(b)(6)];

2.  The second cause of action for misappropriation of trade secrets does not state a claim upon which relief can be granted because Plaintiff does not allege facts to indicate an improper acquisition, disclosure, or use of its alleged trade secrets [Rule 12(b)(6)];

3.  The third cause of action for trade dress infringement does not state a claim upon which relief can be granted because the claimed trade dress is generic, and the allegations are factually insufficient to satisfy the requirements of the Lanham Act [Rule 12(b)(6)];

4.  The fourth cause of action for "fraud in the inducement" does not state a claim upon which relief can be granted because the parties did not enter into a binding and enforceable contract and because the claim is superseded by the California Uniform Trade Secrets Act ("CUTSA") [Rule 12(b)(6)];

5.  The fifth cause of action for "promise without intent to perform" does not state a claim upon which relief can be granted because Plaintiff does not and cannot allege facts demonstrating that Kilroy intended not to perform at the time the alleged promise was made [Rule 12(b)(6)];

6.  The sixth cause of action for breach of the implied covenant of good faith and fair dealing does not state a claim upon which relief can be granted because Plaintiff does not and cannot allege an enforceable contract on which it can be based [Rule 12(b)(6)]; and

7.  The seventh cause of action for unjust enrichment does not state a claim upon which relief can be granted because it is superseded by the CUTSA [Rule 12(b)(6)].

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 902-0123

Pursuant to Local Rule 7-3, the parties have met and conferred  prior to filing this Motion. Declaration of Bob Muller ("Muller Dec."), at ¶ 1.

This motion is based on this notice, the attached memorandum of points and authorities, and upon such other and further evidence and argument as the Court may deem just and proper.

Dated: May 20, 2014                    CYPRESS LLP


                                       By:   /s/ Nabil Abu-Assal
                                             Nabil L. Abu-Assal
                                             Robert J. Muller
                                       Attorneys for Defendant
                                       Kilroy Realty Corporation

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ……………………………………………………………   1

II.     FACTUAL ALLEGATIONS FROM THE COMPLAINT ……………………   3

III.    LEGAL STANDARD FOR MOTION TO DISMISS ……………………………   6

IV.     ARGUMENT ……………………………………………………………………   7

   A.   The Breach Of Contract Claim Fails Because Korman Has Not Alleged
        An Enforceable Contract ………………………………………………   7

      1.   The Term Sheet Manifests An Intent For Further Negotiations And
           Is Subject To A Final Agreement …………………………………   8

      2.   The Term Sheet Is Too Indefinite And Uncertain To Constitute
           An Enforceable Contract …………………………………………   9

      3.   The Parties' Subsequent Exchange Of Documents Alleged In The
           Complaint Conclusively Shows That There Was No
           Enforceable Contract …………………………………………   10

      4.   The Contract Claim Should Be Dismissed With Prejudice Because
           Korman Cannot Cure The Defect …………………………………   12

   B.   The Breach Of The Implied Covenant Of Good Faith And Fair Dealing
        And Fraud In The Inducement Claims Must Be Dismissed With Prejudice
        Because There Is No Enforceable Contract …………………………   13

   C.   Korman's Failure To Allege Facts Of An Improper Motive Of Kilroy Is
        Fatal To Its Trade Secret Misappropriation And Promissory
        Fraud Claims ……………………………………………………………   13

   D.   The California Uniform Trade Secrets Act Preempts Korman's Claim For
        Fraud And Unjust Enrichment ………………………………………   16

   E.   Korman Does Not Allege Any Protectable Trade Dress …………………   18

      1.   Korman's Alleged Trade Dress Is Generic And Therefore
           Unprotectable ……………………………………………………   19

      2.   Korman Does Not Allege Sufficient Facts To Support The Element
           Of Nonfunctionality ………………………………………………   21

      3.   Korman Does Not Allege Any Facts Of Consumer Confusion ………   22

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

V.    CONCLUSION.................................................................................. 23

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

## <u>TABLE OF AUTHORITIES</u>

**CASES**

**Page(s)**

*Accuimage Diagnostic Corp. v. Terarecon, Inc.*,
    260 F.Supp.2d 941 (N.D. Cal. 2003)............................................................ 21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................... 6, 14-15, 22

*Balisterari v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1988).................................................................. 6

*Beck v. Am. Health Group Int'l, Inc.*,
    211 Cal. App.3d 1555, 1563 (1989)...................................................passim

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................... 6, 14-15

*Born v. Koop*,
    200 Cal. App. 2d 519 (1962).................................................................. 11

*Bosinger v. Belden CDT, Inc.*,
    358 Fed. Appx. 812 (9th Cir. 2009) ...................................................... 17

*Branch v. Tunnell*,
    14 F.3d 449 (9th Cir. 1994) ............................................................... 4, 6

*Digital Envoy, Inc. v. Google, Inc.*,
    370 F.Supp.2d 1025 (N.D. Cal. 2005).................................................. 17

*Holland v. Morse Diesel Int'l, Inc.*,
    86 Cal. App. 4th 1443 (2001).......................................................... 3-4, 7-8

*Hsu v. OZ Optics Ltd.*,
    211 F.R.D. 615 (N.D. Cal. 2002) ......................................................... 13

*K.C. Multimedia, Inc. v. Bank of America Tech & Operations*,
    171 Cal. App. 4th 939 (2009)............................................................ 3, 16

*Mattel, Inc. v. MGA Entertainment, Inc.*,
    782 F.Supp.2d 977 (C.D. Cal. 2011)................................................. 16-18

*Racine & Laramie, Ltd., Inc. v. Dept. of Parks & Recreation*,
    11 Cal. App. 4th 1026 (1992)............................................................... 13

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

*RDF Media Ltd. v. Fox Broadcasting Co.*,
    372 F.Supp.2d 556 (C.D. Cal. 2005)..................................................................18-19

*Silvaco Data Systems v. Intel Cop.*,
    184 Cal. App. 4th 210 (2010).................................................................... 16

*Sunpower Corporation v. Solarcity Corporation*,
    2012 WL 6160472, Case No. 12-CV-00694-LHK (N.D.Cal. Dec. 11, 2012) ................ 16-17

*Toms v. Hellman*,
    115 Cal. App. 74 (1931)..............................................................................8-10

*Vess v. Ciba-Geigy Corp., USA*,
    317 F.3d 1097 (9th Cir. 2003).................................................................. 7

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
    549 F.Supp.2d 1168 (N.D. Cal. 2007)..........................................................19-21

*Yield Dynamics, Inc. v. Tea Sys. Corp.*,
    154 Cal. App. 4th 547 (2007).................................................................... 15

*Zella v. E.W. Scripps Co.*,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007)..........................................................2, 7

**STATUTES**

**Page(s)**

CAL. CIV. CODE § 3426.1(b)......................................................................2, 3, 13, 16-18

INTERNAL REVENUE CODE §§ 856 through 860...........................................................12

Lanham Act § 43(a).....................................................................................3, 18-19, 22

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Kilroy is the owner and developer of a mixed-use commercial and residential project located at Columbia Square, an historical landmark in Hollywood (the "Columbia Square Project"). Upon completion, the Columbia Square Project is expected to exceed 650,000 square feet of high-end commercial offices, retailers, restaurants, and a 20-story residential tower with luxury hotel-like amenities for extended-stay clientele.

Kilroy entered into discussions with Korman, a Philadelphia-based company, about the prospect of Korman consulting on and managing the residential tower. Negotiations took place at varying degrees for several months, with the parties exchanging various draft language outlining their respective roles and obligations and culminating in a draft Management Agreement. *As admitted in the Complaint,* the negotiations ended with Korman's counsel submitting *an extensively edited and redlined counter-proposal to Kilroy.*

The Los Angeles-based Kor Group was ultimately retained to manage the residential tower. Kilroy and the Kor Group retained the design services of Kelly Wearstler, whom the New Yorker Magazine called "the presiding *grande dame* of West Coast interior design" to develop and execute the interior design of the residential tower.

Nearly one-year after having failed to enter into an agreement with Kilroy to manage the residential tower, Korman filed the instant Complaint and for the first time claims that it had a contract with Kilroy and that Kilroy "misappropriated" trade secrets. The Complaint is silent, however, as to whether Korman had ever asserted to Kilroy, in that one-year period of time, that the parties had entered into an agreement.

Just as odd is Korman's failure to allege why it did nothing to recover its so-called trade secrets or take any step to ensure that Kilroy did not "use" them. Instead, Korman relies on form-book, boilerplate, conclusory allegations that fail to satisfy

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

1   the standards for pleading such claims under the Supreme Court's precedent, namely,

2   *Iqbal* and *Twombly*.

3       Ill-conceived from the start, the Complaint fails to state a cause of action on

4   each of its seven claims.

5       First, Korman alleges breach of contract, breach of the covenant of good fair

6   and fair dealing, and fraudulent inducement of contract based on a two-page

7   document captioned a "Term Sheet," which Korman, obviously uncomfortable with

8   the implication of that name, renames as the "Initial Contract." Korman does not

9   attach the Term Sheet to the Complaint, or the subsequent Scope of Services Sheet or

10  draft Management Agreement – both of which are expressly referenced in the Term

11  Sheet as documents to be negotiated in the future. These three documents

12  conclusively establish that the parties never reached a meeting of the minds on the

13  material terms of their relationship. They are littered with questions, notations for

14  further review, and outright rejection of proposed terms. Korman cannot circumvent

15  the Court's review of these documents by failing to attach them to the Complaint.

16  Kilroy attaches them as exhibits to this motion and the Court can, and should, review

17  their contents in considering the motion. *See Zella v. E.W. Scripps Co.*, 529 F. Supp.

18  2d 1124, 1131 (C.D. Cal. 2007) (on motion to dismiss for failure to state a claim,

19  court may consider documents referenced and relied upon in the complaint).

20      Second, Korman's claims for trade secret misappropriation and promissory

21  fraud fail to meet the pleading requirements mandated in *Iqbal* and *Twombly*.

22  Korman's claims are based on the thread-bare accusation that Kilroy "induced"

23  Korman to disclose its alleged trade secrets based on the promise of a future

24  partnership. This accusation, unsupported by any factual allegations, is contradicted

25  by the documents referenced in its Complaint that show the parties never agreed on

26  materials terms of the proposed relationship.

27      Third, the California Uniform Trade Secrets Act ("CUTSA") preempts

28  Korman's claims for fraud and unjust enrichment because they are based on the same

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

nucleus of allegations as Korman's claim for trade secret misappropriation. The CUTSA supersedes even those claims that "seek something more" or require additional elements so as to advance its purpose of "occupy[ing] the field of trade secret liability to the exclusion of other civil remedies." *K.C. Multimedia, Inc. v. Bank of America Tech & Operations,* 171 Cal. App. 4th 939, 958 (2009).

Finally, Korman fails to identify any protectable trade dress. Korman instead makes sweeping generalizations and seeks monopoly protection over the use of "sophisticated, contemporary materials," amenities such as outdoor pools and lobby bars, and features such as "neutral color palettes." Korman cannot allege a distinctive, non-functional aspect of its "trade dress" and has not even attempted to allege facts of consumer confusion as required by the Lanham Act.

For these reasons, detailed more fully below, Kilroy respectfully requests that the Court dismiss with prejudice each of Korman's seven causes of action.

## II.   FACTUAL ALLEGATIONS FROM THE COMPLAINT[1]

Kilroy is a real estate development and management company that owns the historic Columbia Square property in Hollywood. Compl., ¶ 9 (Doc. 1). Kilroy is in the process of developing the Columbia Square Project to, a  mixed-use commercial and residential complex that includes short-term furnished apartment rentals. *Id.* at ¶¶ 9, 15.

Between December 2012 and June 2013, Kilroy and Korman discussed a possible collaboration  regarding the operation, management, and some design components of the residential tower at Columbia Square Project. Compl., ¶¶ 10-22, 27-41 (Doc. 1). The parties exchanged drafts and revisions to multiple documents that dealt with the terms of such proposed relationship. *Id.*

---

[1] The allegations in Korman's Complaint are presumed to be true for the purposes of this Rule 12(b)(6) motion to dismiss. However, the terms of the supposedly breached agreement take precedence over any allegations in the Complaint to their effect. *Holland v. Morse Diesel Int'l, Inc.,* 86 Cal. App. 4th 1443, 1447 (2001). Kilroy's citations to the Complaint are not intended as, and should not be construed as, admissions to their veracity.

CYPRESS, LLP

11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

Among these documents were a two-page Term Sheet, a four-page Scope of Services Sheet, and a long-form draft Management Agreement. Compl., ¶¶ 36, 38-41 (Doc. 1); Muller Decl., ¶¶ 2-4, Exhs. A-C.[2]

The Term Sheet[3] provides an "outline [of] the general terms and conditions" of Kilroy's proposal. The Term Sheet also raises questions regarding "*the need to understand what costs are to be included in the management/franchise fee*." The Term Sheet articulates the need for the parties to negotiate further and provides that Kilroy "*is outlining a scope of services to be provided in the final agreement*." Muller Decl., ¶ 2, Exh. A (emphasis added).

The Scope of Services Sheet exchanged between the parties includes handwritten notations and the initials "BJK" (Bradley J. Korman) on top of the first page. Compl., ¶ 38 (Doc. 1); Muller Decl., ¶ 3, Exh. B. The notations indicate several unresolved issues. By way of example only, next to the bullet point which stated that Korman would "design, construct, furnish and operate a pre-construction marketing and leasing facility (location and hours of operation TBD) in the vicinity for purposes of reaching pre-leasing and lease up targets," there appears a handwritten note, "*Need to understand?*" *Id.* at p. 3 (emphasis added). Attached to the Scope of Services Sheet is a page that is entirely handwritten, in the same color and handwriting as the notations on the preceding pages, with the heading "*Items to Discuss*." *Id.* at p. 4.

The Management Agreement is a 50-plus page document, of which drafts were exchanged by Kilroy and Korman. Compl., ¶ 40 (Doc. 1); Muller Decl., ¶ 4, Exh. C. The document contains numerous additions, deletions, all modifications, *all* by

---

[2] Because the relevant documents directly contradict its own arguments, Korman does not attach the documents referenced and relied upon in its Complaint. In conformity with federal and state law, Kilroy attaches these documents as exhibits to its motion to dismiss. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *Holland v. Morse Diesel Int'l, Inc.*, 86 Cal. App. 4th 1443, 1447 (2001).

[3] In a transparent attempt to confer on the document more importance than is warranted, Korman refers to the Term Sheet as the "Initial Contract." This designation is not supported by the form or substance of the document. Kilroy declines the invitation to call the document something other than what it is, and refers the document by its title: the "Term Sheet."

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

Korman's counsel. *Id.* Korman's counsel re-drafted the entire paragraph governing Korman's base management fees, reimbursables, and incentive fees. Korman's counsel also marked paragraphs on accounting and insurance with either "TBD" or "under review" for Korman's approval. Korman's counsel crossed off provisions regarding KRC's status as a Real Estate Investment Trust ("REIT") and added language increasing Korman's discretionary authority regarding tenant rules. *Id.*

As part of the parties' ongoing discussions, Korman alleges that it provided Kilroy with certain materials that it now contends constitute its trade secrets, including proformas, historical information on other Korman projects and certain other unidentified information. Compl., ¶ 18 (Doc. 1).

Ultimately, Kilroy hired another management company, the Kor Group. Compl., ¶ 47 (Doc. 1).

Korman alleges that it learned details of Kilroy's development of the Columbia Square Project with the Kor Group through an article published in *Business Wire*. Compl., ¶ 49 (Doc. 1); Muller Decl., ¶ 5, Exh. D.

Among other things, the article states that the Columbia Square Project is being designed by the "internationally renowned designer Kelly Wearstler…whose body of work includes grand residential interiors for some of the most prominent players in the worlds of art, business and entertainment as well as the Viceroy Santa Monica, Avalon Beverly Hills and the award-winning Viceroy Anguilla." *Id.*

Korman contends, based on the description in *Business Wire*, that Ms. Wearstler's design in fact incorporates Korman's protectable trade dress, which is described so broadly as to include:

- "quality, sophisticated, contemporary materials and finishes" (Compl., ¶ 24);
- "marble counters, classic, modern wood cabinetry, upgraded stainless steel appliances" (*Id.* at ¶ 25);
- "modern, comfortable, yet clean-lined and durable, and functional" furniture (*Id.* at ¶ 25); and

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

- "amenities and public areas including pools with hot tubs for lounge seating and sunning, outdoor space to relax and unwind, a fitness center with modern gym equipment, a business center, a movie screening room, a roof deck bar and lounge, and a small lobby bar serving well-made cocktails" (*Id.* at ¶ 26).

In an attempt to punish Kilroy for selecting another company, Korman filed suit against Kilroy for breach of contract and covenant of good faith and fair dealing, trade secret and trade dress misappropriation, fraud, and unjust enrichment.

### III.   LEGAL STANDARD FOR MOTION TO DISMISS

"A motion to dismiss should be granted if a plaintiff fails to plead enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (internal quotation marks omitted). A claim has facial plausibility only when the plaintiff pleads sufficient facts to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556. The plausibility standard demands more than a sheer possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

"Dismissal can be based on the lack of a cognizable theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balisterari v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.,* at 663. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Twombly,* 550 U.S. at 557.

Documents that are referenced in, but not physically attached to, the pleading may be considered without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Sonoma,* 307 F.3d 1119 (9th Cir. 2002). This rule applies whenever "the plaintiff's claim depends on the contents

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1131 (C.D. Cal. 2007).

The terms of the supposedly breached agreement take precedence over any allegations in the Complaint to their effect. *Holland v. Morse Diesel Int'l, Inc.*, 86 Cal.App.4th 1443, 1447 (2001).

Dismissal with prejudice is proper where "the pleading could not possibly be cured by the allegation of other facts." *Vess v. Ciba-Geigy Corp., USA,* 317 F.3d 1097, 1108 (9th Cir. 2003).

## IV.   ARGUMENT

### A.   The Breach Of Contract Claim Fails Because Korman Has Not Alleged An Enforceable Contract.

The Term Sheet upon which Korman bases all of its claims, by its own terms, is not a contract. It is an "outline" of a proposed relationship between the parties and an invitation to conduct further negotiations regarding the scope of Korman's obligations and compensation. The parties' subsequent exchange of drafts, proposals, and counterproposals of the details of their relationship – all of which are alleged by Korman in its Complaint – underscores the fact that the Term Sheet was never anything more than an "agreement to agree."

In California, a mere "agreement to agree . . . cannot be the basis of a cause of action." *Beck v. Am. Health Group Int'l, Inc.,* 211 Cal. App. 3d 1555, 1563 (1989). "A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent." *Id.* at 1562.

///

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

Dismissal at the pleading stage is appropriate because courts look to the "[t]he objective intent as evidenced by the words of the instrument, not the parties' subjective intent" when determining whether a writing constitutes "a final agreement or merely an agreement to make an agreement." *Beck,* 211 Cal. App. 3d at 1562.

Here, the Term Sheet objectively is not a final agreement, as evidenced by the fact that (1) on its face, the Term Sheet manifests an intent for further negotiation on materials points, and (2) the terms that are included are indefinite and uncertain. *See Beck,* 211 Cal. App. 3d at 1563; *Toms v. Hellman,* 115 Cal. App. 74, 77 (1931). The Term Sheet, which objectively shows a mere agreement to agree, takes precedence over any allegations to the contrary in the Complaint. *See Holland, supra,* 86 Cal. App. 4th at 1447.

### 1.    The Term Sheet Manifests An Intent For Further Negotiations And Is Subject To A Final Agreement.

In *Beck,* 211 Cal. App. 3d at 1558-60, the Court of Appeal affirmed dismissal of the plaintiff's breach of contract and covenant of good faith and fair dealing claims against his would-be employer at the pleading stage. The Court held that the defendant's offer letter to the plaintiff, which outlined the terms of his employment, "manifest[ed] an intention of the parties that no binding contract would come into being until the terms of the letter were embodied in a formal contract to be drafted by corporate counsel." *Id.* at 1563.

The letter stated that it was an "outline of our future agreement," that it would be "forward[ed] to Corporate Counsel for the drafting of a contract," and that the parties would "discuss" the terms further "when we have a draft." *Id.* at 1559.

The Court held that the letter, "taken as a whole…in [its] ordinary sense," did not create a binding agreement. *Id.* at 1562-63. Because the letter set out only an "outline" of the parties' agreement subject to approval by corporate counsel and further discussions by the parties, there was no mutual assent to binding terms. *Id.* at 1563. The plaintiff's subjective understanding of the letter as something more than it

CYPRESS, LLP

11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

was "is immaterial in the face of its language which plainly indicated otherwise." *Id.*

Similar to the offer letter in *Beck*, the Term Sheet here, notwithstanding Korman's moniker as the "Initial Contract" (a moniker which does not appear on the document itself), was nothing more than an "outline" of the "general terms and conditions" of a proposed relationship. Muller Decl., ¶ 2, Exh. A, p. 1. The Term Sheet *on its face* manifests an intent to continue their negotiations on crucial deal points, such as the scope of Korman's expected services and the calculation of its management fee. It highlights the "need to understand what costs are not included in the management/franchise fee." *Id.* It also anticipates that Kilroy would "outlin[e] a scope of services to be provided in the final agreement." *Id.*, p. 2.

In sum, the Term Sheet reflects nothing more than an *expectation* of further negotiations and a final agreement in the future. Thus, Korman's subjective characterization of the Term Sheet as the "Initial Contract" is immaterial and cannot be presumed to be true under Rule 12(b)(6). *See Beck,* 211 Cal. App. 3d at 1563. At most, the Term Sheet is "'an agreement to agree' which cannot be made the basis of a cause of action." *Id.*

### 2. The Term Sheet Is Too Indefinite And Uncertain To Constitute An Enforceable Contract.

"[I]t is elementary that unless the agreement to execute the future contract [is] definite and certain *upon all the subjects to be embraced, so that nothing is left for future negotiation*, it is nugatory." *Toms, supra,* 115 Cal. App. at 77. (emphasis added). The same rule applies whether the preliminary negotiations were oral or in writing, if it manifestly appears that certain parts of the contract are to be agreed upon later and inserted in a formal draft. *Id.* at 78.

In *Toms,* the Court sustained the demurrer of plaintiff's action to enforce a written offer by the defendant corporation to issue bonds. *Id.* at 83. The Court held that the terms of the bond issue were too indefinite and uncertain to constitute a

CYPRESS, LLP

11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

binding agreement. *Id.* at 82. The letter proposed that the bonds would be secured "in the customary manner as approved by the Bondholders Reorganization Committee" without defining what was meant by "the customary manner." *Id.* The letter failed to identify what would constitute a default and how a notice for such default would be given and processed. *Id.* "It would appear, therefore, that the offer was so incomplete and uncertain as to permit the formation of no contract by its acceptance." *Id.*

Here, the Term Sheet is too indefinite and uncertain to constitute an enforceable agreement. The Term Sheet is a two-page document that describes only the "general terms and conditions" of the proposed relationship between Korman and Kilroy. Muller Decl., ¶ 2, Exh. A. The Term Sheet does not enumerate the services expected of Korman, and instead only provides a non-exhaustive list of examples subject to "a scope of services to be provided in a final agreement." *Id.* at p. 2. It does not identify which expenses and overhead would be attributable to Korman, and instead reserves such topic for future discussions. *Id.* at p. 1. It contemplates a termination fee in the event of termination "without cause," but fails to identify what would or would not constitute "cause." *Id.* at p. 2. It proposes an incentive fee based on a target cash flow to be determined "through a market study 6 months prior to certificate of occupancy" but does not identify who would conduct the market study or the parameters within which it would be conducted. *Id.* at p. 1.

As a matter of law, the Term Sheet was far from being "definite and certain upon all the subjects to be embraced." *See Toms, supra,* 115 Cal.App. at 82. Thus, Korman's alleged acceptance of the Term Sheet did not result in the formation of an enforceable contract. *Id.*

### 3.   The Parties' Subsequent Exchange Of Documents Alleged In The Complaint Conclusively Shows That There Was No Enforceable Contract.

Korman bases its contract cause of action solely on the two-page Term Sheet and not the Scope of Services Sheet or the draft Management Agreement that were

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

subsequently exchanged by the parties. The reason for this is that the Scope of Services Sheet and the Management Agreement clearly reveal that the parties had not reached a meeting of the minds on the scope or terms of the proposed agreement that was "outlined" in the Term Sheet.

Indeed, Korman's admission that "Korman submitted a markup of the [Management] agreement to Kilroy" (Compl., ¶ 41 (Doc. 1)) is fatal to its contract claim. *See Born v. Koop*, 200 Cal. App. 2d 519, 524-525 (1962) ("A counter offer by the offeree, relating to the same matter as the original offer, is a rejection of the original offer, unless the offeror in his offer, or the offeree in the counter-offer states that in spite of the counter-offer the original offer shall not be terminated.").

The Scope of Services Sheet and the marked-up Management Agreement highlight the outstanding material issues in the Term Sheet that never were resolved by the parties. Among other things, they reveal:

- Disagreement over the scope of compensation with respect to which party would be responsible for certain costs (i.e., notations on the Scope of Service Sheet that certain costs allocated to Korman instead should be "paid by property") (Muller Decl., ¶ 3, Exh. B, p. 4);

- Questions on Korman's part and the need for further "consult" on issues of Korman's obligations regarding ground floor and common area programmatic requirements, operation of a marketing and leasing office, and Korman's allocation of "other marketing costs" (*Id.* at pp. 1-4);

- Three handwritten "*Items to Discuss*" regarding payroll and compensation issues for Korman's team (*Id.* at p. 5); and

- Extensive edits *on every page of* the Management Agreement made by Seyfarth Shaw, LLP, counsel for Korman, that include substantive additions, deletions, modifications, rewrites, or comments like "TBD" and "[Korman] TO REVIEW." (Muller Decl., ¶ 4, Exh. C).

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

Of particular importance, Korman's counsel *completely deleted* Paragraph 2.11, "Protection of REIT Status," a key provision for Kilroy. Muller Decl., ¶ 4, Exh. C, p. 15, ¶ 2.11. To maintain its status as a REIT (real estate investment trust) within the meaning of Sections 856 through 860 of the Internal Revenue Code of 1986 (the "Code"), Kilroy's income must qualify as "rents from real property" as described in Section 856(d) of the Code. Accordingly, Paragraph 2.11 required Korman to agree, for example, that it would "not accept, or cause or allow to be earned any income or fees from a tenant that is derived, in whole or in part, on the income or profits by the business activities of such tenant," as such income may fail to qualify as "rents from real property" and jeopardize Kilroy's REIT status. By deleting this entire paragraph, Korman effectively refused to agree that it would abide by the Code to protect Kilroy's REIT status.

After making such major proposed changes throughout the draft Management Agreement, Korman knew "or ha[d] reason to know" that Kilroy "[did] not intend to conclude a bargain until [Kilroy] has made a further manifestation of assent." *Beck, supra,* 211 Cal. App. 3d at 1562. At most, Korman and Kilroy had an agreement to agree, which cannot be the basis for a breach of contract claim.

As a matter of law, Korman's contract claim fails.

### 4.     The Contract Claim Should Be Dismissed With Prejudice Because Korman Cannot Cure The Defect.

Korman cannot plead around the plain language of the Term Sheet, the Scope of Services Sheet, and the marked-up Management Agreement, which show the parties, at best, had an agreement to agree. *See Beck,* 211 Cal. App. 3d at 1563. Thus, this claim should be dismissed with prejudice.

///

///

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

**B.    The Breach Of The Implied Covenant Of Good Faith And Fair Dealing And Fraud In The Inducement Claims Must Be Dismissed With Prejudice Because There Is No Enforceable Contract.**

"There is no obligation to deal fairly or in good faith absent an existing contract." *Racine & Laramie, Ltd., Inc. v. Dept. of Parks & Recreation,* 11 Cal. App. 4th 1026, 1032 (1992). "The fact that parties commence negotiations looking to a contract, or to the amendment of an existing contract, does not by itself impose any duty on either party not to be unreasonable or not to break off negotiations, for any reason or for no reason." *Id.* at 1034 (emphasis added).

In *Beck, supra,* the Court dismissed the breach of the implied covenant of good faith and fair dealing claim, along with the contract claim, explaining that "the validity of [that cause of action] is dependent upon the formation of contractual relationship." 211 Cal. App. 3d at 1563. The same result is warranted here.

Similarly, Korman's claim that Kilroy "induced Korman to enter into the agreement detailed in the [Term Sheet]" (Compl., ¶ 77 (Doc. 1)) presupposes and is reliant on the existence of an agreement between the parties. Without such agreement, there can be nothing to "induce" and Korman's claim must fail.

**C.    Korman's Failure To Allege *Facts* Of An Improper Motive Of Kilroy Is Fatal To Its Trade Secret Misappropriation And Promissory Fraud Claims.**

Korman's second cause of action for trade secret misappropriation and sixth cause of action for promissory fraud both hinge on unsupported allegations that Kilroy deceived Korman to disclose alleged trade secrets by promising to "partner" on the Columbia Square Project. Compl., ¶¶ 63, 83-85 (Doc. 1).

To state a claim under the California Uniform Trade Secrets Act ("CUTSA"), a plaintiff must allege improper acquisition, disclosure, or use of a trade secret. Cal. Civ. Code § 3426.1(b). Promissory fraud requires factual allegations that the defendant intended not to perform an alleged promise *at the time the promise was*

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

1  made. *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002) ("Plaintiff must

2  point to *facts* which show that defendant harbored an intention not to be bound by

3  terms of the contract at formation.") (emphasis in original).

4       These allegations must be supported by *facts* that "permit the court to infer

5  more than the mere possibility of misconduct." *Iqbal, supra*, 556 U.S. at 679. Bare

6  assertions that "amount to nothing more than a formulaic recitation of the

7  elements…are conclusory and not entitled to be assumed true." *Id*. at 681 (internal

8  citations omitted).

9       Nowhere in the Complaint does Korman allege any *facts* indicating that Kilroy

10  *disclosed* Korman's "trade secrets" to the Kor Group or that it ultimately *used* such

11  information as part of the Columbia Square Project. Korman's bare conclusions to

12  that effect in paragraph 62 of the Complaint must be disregarded. *See id.*

13       Having failed to adequately plead "use" or "disclosure," Korman is left with

14  pursuing CUTSA's "improper acquisition."  To that end, Korman contends Kilroy

15  "induced" Korman to disclose the alleged trade secrets based on promises of a future

16  "partnership." Compl., ¶¶ 18, 77-80, 83-85 (Doc. 1). However, beyond the naked

17  assertion of such "inducement," Korman does not allege any facts that plausibly

18  attribute an improper motive to Kilroy. As such, Korman's allegations do not satisfy

19  the pleadings standards articulated in *Twombly, supra,* 550 U.S. at 570.

20       In *Twombly*, the plaintiff accused several regional telephone companies of

21  colluding to drive up prices by engaging in "parallel courses of conduct" to resist

22  competition from upstart service providers. *Twombly, supra,* 550 U.S. at 550. Ruling

23  that such allegation failed to satisfy Rule 8's pleading requirements, the Supreme

24  Court held that "without more, parallel conduct does not suggest conspiracy, and a

25  conclusory allegation of agreement at some unidentified point does not supply facts

26  adequate to show illegality." *Id*. at 556-57. Although a connection between parallel

27  conduct and a conspiracy may be "possible," Rule 8 requires more to show a

28  "plausibility of entitlement to relief." *Id*. at 557. What was needed, the Court

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

reasoned, was "a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Id.*

Korman's assertion "on information and belief [that] Kilroy had no intention of fulfilling the promises to Korman in the Initial Contract, and instead, planned to use Korman's confidential information to develop the Columbia Square project with the Kor Group instead" (Compl., ¶ 84 (Doc. 1)) is fatally deficient and not entitled to any presumption of truth because it is just a "legal conclusion couched as a factual allegation." *See Iqbal*, 556 U.S. at 678.

Moreover, Korman's conclusion does not plausibly follow the facts alleged. Korman alleges that the parties entered into a binding agreement on April 19, 2013. Compl., ¶ 36 (Doc. 1). Korman next alleges that Kilroy never had any intention of performing under such agreement, citing to David Simon's email to Brad Korzen dated July 22, 2013. *Id.* at ¶ 44. Even assuming the truth of such allegations (which Kilroy denies), the existence of an email in July cannot plausibly indicate an intent to defraud Korman **three months earlier** in April. *See Yield Dynamics, Inc. v. Tea Sys. Corp.,* 154 Cal. App. 4th 547, 576 (2007) (subsequent nonperformance of an alleged promise is insufficient to establish promissory fraud).

This is especially true considering Korman's allegations that during those three months the parties exchanged and marked up drafts of the Scope of Services Sheet and Management Agreement, which revealed fundamental differences in the parties' positions with respect to the scope of services, costs, and obligations under the REIT provision. *See* Compl., ¶¶ 38-41 (Doc. 1); *see also* Muller Decl., ¶¶ 2-4, Exhs. A -C. As in *Twombly*, an equally plausible conclusion can be drawn that Kilroy simply changed its mind about working with Korman after being unable to reach an agreement on key deal terms. *See Twombly*, 550 U.S. at 570.

Without factual allegations demonstrating Kilroy's improper motive at the time it acquired the alleged trade secrets, Korman "has not nudged [its misappropriation or fraud] claims across the line from conceivable to plausible." *Id.*

**D.     The California Uniform Trade Secrets Act Preempts Korman's Claims For Fraud And Unjust Enrichment.**

CUTSA preempts all other claims based on the same nucleus of acts as trade secret misappropriation. *Silvaco Data Systems v. Intel Cop.*, 184 Cal. App. 4th 210, 232 (2010). The purpose of CUTSA is to "occupy the field of trade secret liability to the exclusion of other civil remedies." *Id.* Thus, the issue in determining whether a claim is preempted by CUTSA is whether the claim is "based upon misappropriation of a trade secret," *not* whether the claim "seeks something more" or requires additional elements. *K.C. Multimedia, Inc. supra*, 171 Cal. App. 4th at 958; *see also Sunpower Corporation v. Solarcity Corporation*, 2012 WL 6160472 at *3, Case No. 12-CV-00694-LHK (N.D.Cal. Dec. 11, 2012) (collecting cases in which the Federal Courts have determined that CUTSA preempts claims where the alleged wrongdoing is "not more than a restatement of the same operative facts supporting trade secret misappropriation").

In *Silvaco,* the Court affirmed the dismissal of the plaintiff's (intentional and negligent) misrepresentation, conversion, and unfair business practices claims as preempted by CUTSA. 184 Cal. App. 4th at 232. The Court reasoned that the plaintiff failed to identify any "interest in property [] other than one arising under trade secrets law." *Id.* at 236. "Nor was any 'conduct' identified that did not depend for its wrongfulness on the use of trade secrets." *Id.* "The non-CUTSA claims therefore . . . are a transparent attempt to evade the stricture of CUTSA by restating a trade secrets claim as something else." *Id.* at 240.

Subsequent federal opinions have followed *Silvaco*. In *Mattel, Inc. v. MGA Entertainment, Inc.,* 782 F.Supp.2d 977 (C.D. Cal. 2011), the district court for the Central District of California held that the CUTSA superseded Mattel's claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty because they were "based on [alleged] misappropriation of confidential information, *whether*

*or not the information me[t] the statutory definition of a trade secret.*" *Id.* at 987-988 (emphasis added)*;see also Sunpower, supra*, 2012 WL 6160472(concluding CUTSA preempts claims based on the misappropriation of information that is confidential but does not rise to the level of trade secret).

In *Digital Envoy, Inc. v. Google, Inc.,* 370 F.Supp.2d 1025, 1035 (N.D. Cal. 2005), the district court  dismissed the unjust enrichment claim as preempted.[4]

Korman's fraud and unjust enrichment claims, both of which incorporate by reference all of the preceding allegations of the Complaint, including the allegations set forth in the section claim for trade secret misappropriation, warrant the same result. As illustrated by the allegations below, Korman does not identify any "conduct" or "property" that does not depend on the alleged misappropriation of the trade secrets:

> [Kilroy] made [its] representations, and concealed information, *with the specific intent of* defrauding Korman and *inducing Korman . . . to disclose confidential information to Kilroy.* (Comp., ¶ 77 (Doc. 1)) (emphasis added).

> Korman would not have entered into the contract or *disclosed confidential information if not for Kilroy's representations and omissions.* (*Id.,* ¶ 78) (emphasis added).

> * * * *

> Kilroy made the promises contained in the [Term Sheet] without any intent to perform, and with *the specific intent of* defrauding Korman and *inducing Korman to enter into the agreement detailed in the [Term Sheet] and to disclose confidential information to Kilroy.* (*Id.,* ¶ 85) (emphasis added).

> * * * *

> *In direct reliance on Kilroy's promise,* and without knowledge that Kilroy had no intention of performing its

---

[4] Moreover, "[u]nder California law, there is no cause of action for unjust enrichment; it is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself." *Bosinger v. Belden CDT, Inc.,* 358 Fed. Appx. 812, 815 (9th Cir. 2009), citing *Melchior v. New Line Products, Inc.,* 106 Cal.App.4th 779, 793 (2003).

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

promise, Korman . . . *disclosed valuable confidential information to Korman. (Id.,* ¶ 87) (emphasis added).

* * * *

Among other things, Kilroy knew, prior to the execution of the [Term Sheet], that they had no intention to work with Korman . . . *and fully intended to use Korman's confidential information to develop the project with the Kor Group. (Id.,* ¶ 89) (emphasis added).

* * * *

*As a result of the receipt of the Korman Trade Secrets,* as well as the time, labor, and money Korman invested in the Columbia Square Project, *Kilroy received a significant benefit at Korman's expense. (Id.,* ¶98) (emphasis added).

In *Mattel,* 782 F.Supp.2d at 977, it did not matter that the claim for breach of fiduciary duty had an additional element, *i.e.,* the existence of fiduciary duty. The CUTSA preempted the claim because it was predicated on the same nucleus of factual allegations as the claim for trade secret misappropriation. Likewise, it does not matter in this case that Korman adorns its Complaint with allegations of "intent to defraud." The substance of the allegations is identical to its claim for trade secret misappropriation.

It also does not matter that Korman sometimes uses the phrase "confidential information" instead of "trade secrets." The law is crystal clear: "[T]o align with the California courts that have addressed this issue, the Court [must] conclude[] that UTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret." *Mattel,* 782 F.Supp.2d at 987.

**E.     Korman Does Not Allege Any Protectable Trade Dress.**

"To withstand a motion to dismiss an infringement claim under § 43(a) of the Lanham Act . . . – whether it be a trademark claim or a trade dress claim – a plaintiff must identify the mark *and* allege three basic elements: (1) distinctiveness; (2) nonfunctionality; and (3) likelihood of consumer confusion." *RDF Media Ltd. v. Fox Broadcasting Co.,* 372 F.Supp.2d 556, 562 (C.D. Cal. 2005) (emphasis added);

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

Lanham Trademark Act, § 43(a), 15 U.S.C. § 1125(a).

"Courts exercise 'particular caution' when extending protection to product designs because such claims present an acute risk of stifling competition." *Walker & Zanger, Inc. v. Paragon Indus., Inc.,* 549 F.Supp.2d 1168, 1174 (N.D. Cal. 2007).

Korman's trade dress infringement claim fails as a matter of law because it does not plead any of the three required elements. *See, generally, RDF Media, supra,* 372 F.Supp.2d 556 (C.D. Cal. 2005) (dismissing trade dress claim without leave to amend pursuant to Rule 12(b)(6)).

### 1.       Korman's Alleged Trade Dress Is Generic And Therefore Unprotectable.

Korman's definition of the "AKA Trade Dress" embraces the entire universe of common functional features in high-end apartments and hotels. Case law is clear that trade dress protection does not extend so far.

"Generic" designs or "designs regarded by the public as the basic form of a particular item" are not protectable. *Walker,* 549 F.Supp.2d at 1174.  To determine whether a product design is generic, the court considers "whether (1) the design's definition is overbroad or too generalized; (2) the design is the basic form of a type of product; or (3) the design is so common in the industry that it cannot be said to identify a particular source." *Id.* at 1175. "Consumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that the product design ordinarily serves." *Id.* at 1176, citing *Wal-Mart Stores, Inc. v. Samara Bros.,* 529 U.S. 205, 213 (2000).

*Walker* is on point. In that case, a manufacturer of stone and ceramic decorative tiles claimed that its trade dress consisted of "classical design, colors and glazes that evoke the look of 'Old World handiwork,'…the depth and dimensions of design relief and the level of intricate detailings." *Id.* at 1172. The plaintiff claimed that its best-selling "Avignon" line of tiles captures the "look and feel" of "French

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

1    architecture and art 'over a large span of time.'" *Id.* It "evokes the weathered look of

2    stone carving" and has "a palette of colors reminiscent of Provence." *Id.* at 1175.

3        The Court held that the plaintiff's identification of its alleged trade dress was

4    impermissibly *generic. Id.* The plaintiff's "empty generalities . . . *leave the boundary*

5    *of plaintiff's trade dress rights unclear . . . ." Id.* (emphasis added).

6        The Court also found that "plaintiff's trade dress definition constitutes the

7    basic form of tile design." *Id.* For example, a three-dimensional tile design

8    necessarily uses "design relief," stone tiles necessarily will look like "stone carving,"

9    and many manufacturers produce "the rustic look of hand-shaped tiles." *Id.*

10       While the plaintiff in *Walker* sought monopoly over everything "old," Korman

11   goes after everything "modern," "contemporary," yet simultaneously "classical."

12       Korman suggests that the Columbia Square Project – which was designed by

13   Kelly Wearstler, one of the most distinctive and recognized interior designers

14   working today – is confusingly similar to Korman's hotels in its use of a

15   "sophisticated, neutral color palette," "fine wood cabinetry," and "aged wood

16   flooring," all of which "combine the warmth of home with the luxury and pedigree of

17   a five-star hotel." Compl., ¶¶ 49, 50 (Doc. 1). Korman uses nebulous terms like

18   "architecturally refined," "luxurious," and "modern, comfortable, yet clean-lined and

19   durable" to describe the features it contends make Korman apartments "inherently

20   distinctive." *Id.* at ¶¶ 24-26.

21       Given such sweeping generalizations, it is impossible to determine exactly

22   what Korman contends is "distinctive" about its design. Is it that the rooms, built to

23   resemble apartments, contain "high ceilings and gas-burning fireplaces"? Does

24   Korman contend that the use of "marble counters, classic, modern wood cabinetry,

25   and upgraded stainless steel appliances" is unique? Is Korman seeking a monopoly

26   for its inclusion of "pools with hot tubs for lounge seating and sunning," "fitness

27   centers with modern gym equipment," and a "lobby bar serving well-made

28   cocktails"?

CYPRESS, LLP

11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

As a matter of law, Korman cannot claim exclusive rights over these common components. "If the law protected styled at such a level of abstraction, Braque might have prevented Picasso from selling cubist paintings in the United States." *Walker,* 549 F.Supp.2d at 1177.

## 2.    Korman Does Not Allege Sufficient Facts To Support The Element Of Nonfunctionality.

In *Accuimage Diagnostic Corp. v. Terarecon, Inc.,* 260 F.Supp.2d 941 (N.D. Cal. 2003),[5] the Court dismissed the plaintiff's trade dress infringement claim on the grounds that it did not sufficiently plead ***how*** its alleged trade dress was unique, inherently distinctive, or nonfunctional. *Id.* at 954. There, the plaintiff alleged that (1) its software generated product reports that are "proprietary, unique and distinctive in the medical imaging applications industry"; (2) "the look and feel of the reports generated by [the program] are non-functional"; and (3) defendant's report copied the "overall 'look and feel' of the [plaintiff's] report such that the report generated by [the defendant] is virtually indistinguishable from the [plaintiff's] reports," which "has caused or is likely to cause customer confusion." *Id.*

In dismissing the claim on a 12(b)(6) motion, the Court held that such allegations as "do little more than mimic the language of the statute." 260 F.Supp.2d at 954. It held that the plaintiff "must plead with specificity how [its] reports are unique and inherently distinctive." *Id.* It also held that the plaintiff "has not to plead[ed] sufficient facts for the court to determine whether the alleged trade dress is nonfunctional." *Id.*

Korman's rote recital of the elements – that "AKA Trade Dress is inherently distinctive and/or has acquired distinctiveness" and that Kilroy's alleged use of the AKA Trade Dress "creat[e] the false and misleading impression that Kilroy's

---

[5] Importantly, *Accuimage* is a pre-*Iqbal/Twombly* decision. Today, after *Iqbal* and *Twombly*, the pleading standard is even higher than the standard applied in *Accuimage*. Korman's claim fails even under the former, lower standard.

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

Columbia Square is endorsed, sponsored, approved, or licensed by Korman" – is no different from the mere recitation of the statutory language that the court in *Accuimage* rejected.

Moreover, Korman utterly fails to allege any facts to support the element of nonfunctionality. As described above, Korman's claimed trade dress encompasses everything from high ceilings, fitness centers, "upgraded stainless steel appliances from top brands," and fireplaces, to rooftop pools and bars that serve "well-made cocktails." These features are all functional. In fact, Korman uses the word "functional" to describe its trade dress, claiming that "the furniture found in the AKA properties is modern, comfortable, yet clean-lined and durable, and *functional* for guest needs." Compl., ¶ 25 (Doc. 1) (emphasis added). Korman never alleges any facts as to how these elements are nonfunctional, as required by the Lanham Act and *Iqbal/Twombly*.

### 3.   Korman Does Not Allege Any Facts Of Consumer Confusion.

Similarly deficient is Korman's thread-bare conclusion that "on information and belief, Kilroy's activities have caused, and unless enjoined by this Court, will continue to cause a likelihood of confusion and deception." Compl., ¶ 71 (Doc. 1). "The Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 686 (disregarding respondent's allegation that appellants discriminated against him "on account of [his] religion, race, and/or national origin and for no legitimate penological interest").

Korman is in the best position to allege whether or not it has suffered any injury, and its allegation "on information and belief" that there was been consumer confusion is improper and deficient. Without such factual allegations, the claim must be dismissed.

# V. CONCLUSION

For the reasons statement above, Kilroy respectfully requests that the Court dismiss with prejudice Korman's claims for breach of contract, breach of the implied covenant of good faith, fraud in the inducement, promissory fraud, trade dress infringement, and unjust enrichment.

Dated: May 20, 2014                          CYPRESS LLP

By: __/s/ Nabil Abu-Assal____
          Nabil Abu-Assal
          Bob Muller
Attorneys for Defendant
Kilroy Realty Corporation

4816-8646-3003, v. 6

CYPRESS, LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123